IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § |
| Plaintiff, | § § Civil Action No. 5:16-cv-00758-FB-JWP |
| v. | § § |
| NABORS INDUSTRIES LTD., NABORS INDUSTRIES, INC., NABORS CORPORATE SERVICES, INC., NABORS DRILLING TECHNOLOGIES USA, INC., C&J WELL SERVICES, INC., C&J ENERGY SERVICES, INC. AND C&J ENERGY SERVICES, LTD., | § § § § § § § § § |
| Defendants. | § § |

## STATEMENT OF FACTS

### FACTS ESTABLISHING PERSONAL JURISDICTION

1. Nabors Industries Ltd. , also known as "Nabors Industries" and "Nabors" (NIL), owns and operates the world's largest land-based drilling rig fleet, is a leading provider of offshore platform workover and drilling rigs in the United States and numerous international markets, and is a global provider of services for land-based and offshore oil and natural gas wells. NIL operates one of the largest land-based drilling rig fleets in the United States. Nabors 2015 annual report Form 10k filed with the United States Securities and Exchange Commission (hereinafter 2015 Annual Report). (Ex. 2, p. 4).

2. NIL is a publicly traded company traded on the New York Stock Exchange under the ticker NBR. NIL 30(b)(6) testimony of Mark Andrews, NIL's Corporate Secretary, hereinafter Andrews deposition. (Ex. 3, p. 28).

3. NIL is the corporate chair of the various Nabors companies. (Ex. 3, p. 28).

4. Nabors.com is the website for NIL. (Ex. 3, pp. 28-29).

5. NIL's "Drilling & Rig Services business" is comprised of global land-based and offshore drilling rig operations and other rig services, consisting of equipment manufacturing, rig instrumentation, optimization software and directional drilling services. (Ex. 2, p.4).

6. NIL's Drilling & Rig Services business consists of four reportable operating segments: U.S., Canada, International and Rig Services. (Ex. 2, pp. 4-5).

7. NIL's US Drilling Operations contributed approximately 33 percent of NIL's consolidated operating revenues during 2015. (Ex. 2, p. 4).

8. On March 24, 2015, NIL completed the merger (the "Merger") of its "Completion & Production Services business" which included Nabors Completion Production Services, Inc. (NCPS), with C&J Energy Services, Inc. ("C&J Energy"). (Ex. 2, p.4).

9. NIL remains a majority shareholder of C&J Energy Services Ltd. (CJES), the combined entity, according to the statement of Anthony Petrello during a 2015 conference call regarding the Merger. (Ex. 4, pp. 2, 5, 7, 8).

10. Mr. Petrello has admitted that before the Merger which was completed during 2015, he took a direct and active role in NCPS operations in North America including his efforts to cut costs. (Ex. 4, p. 8).

11. Even after the Merger, NIL still has substantial investments in the combined entity C&J Energy Services, Ltd. (CJES) and remains engaged in the completion and production services business. CJES provides well construction, well completions, well support and other complementary oilfield services to oil and gas exploration and production companies primarily in North America. (Ex. 2, p. 4; Ex. 4, pp. 2, 5, 7, 8).

12. NIL owns or leases executive and administrative office space in Houston, Texas, (Ex. 2, p. 15) and has "assets located in the Eagle Ford Shale, Texas" according to NIL's 2014 Form 10k Annual Report filed with the SEC. (Ex. 5, p. 20).

13. In January 2013, NIL purchased the business of NES, which operates primarily in Texas, Louisiana, and North Dakota, as a provider of drift-while-drilling and measure-while-drilling services and technology. This acquisition expanded NIL's technology and development capability for drilling and measurement tools and services, and is included in NIL's Rig Services operating segment. (Ex. 5, p. 77).

14. NIL's 2015 Annual Report was completed and released in Houston Texas, by its agent PricewatersCoopers, LLP. (Ex. 2, pp. 45, 111).

15. NIL's 2014 Annual Report filed with the Securities and Exchange Commission ("2014 Annual Report") describes the impact on NIL's business caused by possible changes in Texas law and by the weather in West Texas. (Ex. 5, p. 16, 35).

16. NIL, on its website, recently recruited new employees for a number of positions located in Texas. (Ex. 6). NIL listed Texas business addresses on many of their contracts, correspondence, and on a Nabors website. (Ex. 7, p. 14 of 19).

17. NIL utilizes an agent, Nabors Corporate Services, Inc., whose corporate office and headquarters is located in Houston, Texas, for administrative activities, including "treasury services, legal services, tax, risk management, accounting [and] [h]uman resources" services. (Ex. 3 at 36:3-37:22, 38:2-8, 168:7-17).

18. NIL maintains offices "directly or through its subsidiaries" in the U.S., including in Texas. (Ex. 3 at 33:16-34:4, 35:11-24).

19. A master service agreement between Nabors entities and New Continental Equipment had an attached certificate of insurance identifying NIL's "Home Office Address" as Houston, Texas, and the insurance covers NIL's operations in "Oil/Gas Rig/Equipment Service/Assembly." (Ex. 7, p. 14 of 19).

20. Exhibit B of NIL's SEC Form 8-K filing signed by NIL's Secretary Mark D. Andrews and dated October 28, 2011 states NIL's board appointed Anthony G. Petrello as Chief Executive Officer of NIL and that he served as Director and President and Chief Operating Officer of NIL since 1991. (Ex. 8, p. 25).

21. Anthony Petrello is president and chief executive officer of NIL. (Ex. 3, p. 104).

22. During May 2008 Anthony Petrello was deposed regarding a civil lawsuit alleging civil rights violations under the Fair Housing Act filed in federal district court in Houston, Texas. (Ex. 9.)

23. Anthony Petrello is a graduate of Harvard Law School. (Ex. 9, p. 8).

24. Anthony Petrello practiced corporate and tax law for the New York office of Baker and McKenzie before joining NIL. (Ex. 9, p. 8).

25. Mr. Petrello moved to Houston during January 1992 to become the "president and chief executive officer" of "Nabors" also known as NIL, which he explained is a "publicly traded company." (Ex. 9, pp. 10-11).

26. Mr. Petrello described his "role" with NIL as being both "president and chief operating officer." (Ex. 9, pp. 10-11).

27. Mr. Petrello described NIL's business as being a "drilling company." NIL provides the equipment and drilling rigs and ancillary equipment, including logistics equipment, trucking, tanks, and other peripheral equipment that is used in either drilling an oil or gas well or working over an oil and gas well. (Ex. 9, p. 11).

28. Mr. Petrello described NIL's customers as being oil companies which include "super majors" such as Exxon and Shell to small privately held companies. (Ex. 9, p. 11).

29. According to Anthony Petrello, NIL operates in the United States in "both the lower 48, Alaska," Canada and "in most of the principal markets around the world where there [is

drilling, about 24 other countries….”  (Ex. 9, p. 11).

30. During 2005 Anthony Petrello testified before the Honorable Alvin W. Thompson, United States District Judge for the District of Connecticut during a sentencing hearing for E. Kirk Shelton, whom he identified as his "closest friend."  (Ex. 10, pp. 34-36 of 57).

31. During the sentencing hearing, Anthony Petrello testified he resided in "Houston, Texas" and provided to the court a street address in Houston, Texas. (Ex. 10, p. 32 of 57).

32. During the sentencing hearing Mr. Petrello testified that in 1991 he joined a company named "Nabors Industries" that was "based in Houston."   (Ex. 10, p. 35 of 57).

33. Mr. Petrello explained during the sentencing hearing that he was still employed by Nabors Industries and that he still lives in Houston, Texas. (Ex.10, pp. 35-36 of 57).

34. The February 8, 2013 Nabors filing submitted to the SEC by General Counsel Laura Doerre was accompanied by an attached exhibit B, the Executive Employment Agreement entered into between NIL (referenced in the employment agreement as both Nabors Industries Ltd. and "Nabors Bermuda"),  Nabors Delaware (also referenced in the agreement as Nabors Industries, Inc.) and Anthony Petrello. (Ex. 11, pp. 12-46).

35. Both "Nabors Bermuda" (NIL) and "Nabors Delaware" (Nabors Industries, Inc.) are collectively referred to in Mr. Petrello's employment agreement as "the Company." (Ex. 11, p.12 of 46).

36. According to the specific terms of the employment agreement "Whenever there is a reference to an obligation of "Company" in this Agreement, that reference is to an obligation of Nabors Bermuda and Nabors Delaware jointly and severally." (Ex. 11, p. 12 of 46).

37. Section 1.7 of Mr. Petrello's employment agreement with NIL describes NIL's business as including "the operation and marketing of land drilling rigs, land workover and well-servicing rigs, and offshore platform workover and drilling rigs; the provision of a wide range of ancillary well-site services including engineering, construction, logistics, maintenance, well logging, directional drilling, rig instrumentation, data collection and other support services…." (Ex. 11, p. 13 of 46).

38. Section 2.2 of Mr. Petrello's employment agreement with NIL specifically describes his duties as including being "responsible for the general management of the affairs of the Company…."  (Ex. 11, p. 19 of 46).

39. Section 2.2 of Mr. Petrello's employment agreement with NIL includes as a condition of employment that he must "devote his reasonable attention and time to the business and affairs of the Company and *its affiliates* to discharge his responsibilities under this Agreement and not to knowingly become involved in a material conflict of interest with the Company or its affiliates, or upon discovery thereof, allow such a

4

conflict to continue….." (emphasis added). (Ex. 11, p. 19 of 46).

40. Section 3.1(a) of Mr. Petrello's employment agreement with NIL mentions that both Nabors Bermuda (NIL) and Nabors Delaware (Nabors Industries, Inc.) must pay Mr. Petrello's base salary and other compensation. (Ex. 11, p. 20 of 46).

41. Section 3.2(d)(ii) of Mr. Petrello's employment agreement with NIL mandates that as a condition of employment he shall be entitled to establish a "Company paid office for his use at or near his principal residence, and/or at any other residence maintained by him. The Executive shall be entitled to employ at the Company's expense for each such office an administrative assistant at appropriate compensation levels as considered necessary by him…." (emphasis added) (Ex. 11, p. 24 of 46).

42. Section 1.15(c) of Mr. Petrello's employment agreement with NIL specifically mentions that a constructive termination without cause would occur based on a "material diminution in the Executive's duties or the assignment to the Executive of duties which are materially inconsistent with his duties or which materially impair the Executive's ability to function as the President and Chief Operating Officer…." (Ex. 11, p.16 of 46).

43. Section 1.15 (e) of Mr. Petrello's employment agreement with NIL also specifically mentions that a constructive termination of Anthony Petrello without cause would occur based on the relocation of the "Company's principal office to a location more than fifty (50) miles from Houston, Texas, or the relocation of the Executive's own office location to a location other than as determined by the Executive…." (emphasis added). (Ex. 11, p. 17 of 46).

44. Under Mr. Petrello's employment agreement constructive termination cannot be effected without first giving notice to the Board of Directors or Compensation Committee of Nabors Bermuda (NIL). (Ex. 11, p. 17 of 46).

45. Mr. Petrello lives and maintains his homestead in Houston, Texas. (Tax record for Petrello). (Ex. 12).

46. Mr. Petrello's alternate address listed with the County Tax assessor is 515 W. Greens Road, Suite 1200, Houston, Texas, the same address listed for Nabors Corporate Services, Inc., NIL's agent for a host of administrative functions. (Ex. 12).

47. Mr. Petrello conducts business from a corporate office located at 515 W. Greens Road, Suite 1200, Houston, Texas. (Stock option Agreement). (Ex. 13, p.10).

48. William Restrepo is Chief Financial Officer (CFO) for NIL. (Leadership Team page found on Nabors website). (Ex. 14).

49. According to 2014 SEC filings by NIL, William Restrepo's address is 515 W. Greens Road, Suite 1200, Houston Texas 77067. (Ex. 15, p. 1).

5

50.  The address of NIL's Corporate Services Office is also 515 W. Greens Road, Suite 1200, Houston Texas 77067, according to NIL's website. (Ex. 27).

51.  NIL's website lists eight addresses where it can be reached, and four of those are in Houston, Texas. (Ex. 27).

52.  Christopher Papouras is currently employed as President of Nabors Drilling Solutions and is part of NIL's Leadership Team. (Ex. 14).

53.  Christopher Papouras resides and works in Texas. (Ex. 16).

54.  Christopher Papouras previously served as the assistant to NIL's chief executive officer, Mr. Anthony Petrello. (Nabors webpage biography). (Ex. 17).

55.  Since at least September 19, 2005, Christopher Papouras corresponded via e-mail through a NIL e-mail address, "Chris.Papouras@nabors.com." (Ex. 18, p. 1).

56.  Since at least September 2005, Mr. Papouras as an agent of Ceniarth Wales Interest, L.P. worked at an office located at 515 W. Greens Road #1200, Houston, Texas 77067. (Ex. 18, p. 5).

57.  In a 2007 Houston, Texas federal district court filing related to a motion to quash a deposition of Anthony Petrello, Mr. Petrello's attorney acknowledged that Christopher Papouras worked with Mr. Petrello. (Ex. 19, p. 7). Mr. Petrello's attorney also identified Christopher Papouras as agent and financial manager of an entity named Ceniarth, also known as Ceniarth Wales Interest, L.P. (Ex. 19, pp. 5-7). Mr. Papouras identified the address of Ceniarth Wales Interest, L.P. as 515 W. Greens Road #1200, Houston, Texas 77067. (Ex. 18, p.5). That address is the same address listed for Nabors Corporate Services office and NIL's general counsel (Ex. 27; Ex. 8, p. 9) and has been used as a business address by NIL's president, Anthony Petrello (Ex. 13) and NIL's chief financial officer, William Restrepo. (Ex.15).

58.  NIL conducts meetings in Houston, Texas, including meetings addressing corporate services agreements with its agent and subsidiary Nabors Corporate Services, Inc. (Ex. 3 at 33:16-34:4, 35:11-24).

59.  NIL conducted business in Texas using its subsidiaries as agents. NIL owns subsidiaries NDIL and NDIL II who likewise have extensive contacts with Texas. (Ex. 3 at 154:10-13, 163:9-15).

60.  NIL listed Texas business addresses on contracts. (Ex. 7, p. 14 of 19).

61.  NIL was also the ultimate owner of Nabors Purchasing Limited (NPL), another subsidiary that NIL employed in NIL's Texas operations. (Ex. 3 at 164:3-7).

62. NIL's executives controlled both NIL and Nabors Purchasing Limited. (Ex. 3. at 93:14-21, 125:5-9).

63. NIL's website is maintained by NIL' "corporate department" in Houston, Texas. (Ex. 3 at 28:21-29:5, 29:16-22, 30:4-7).

64. Laura Doerre was employed as general counsel of NIL. (Ex. 14).

65. While serving as General Counsel for NIL, Laura Doerre's business address was 515 W. Greens Road Suite1200, Houston, Texas 77067.  (Ex. 8, p. 9).

66. Julia Wright is currently employed as assistant general counsel of NIL and maintains a business office at 515 W. Greens Road, Suite 1200, Houston Texas 77067.  (Ex. 28; Ex. 29).

67. Julia Wright joined Nabors Corporate Services legal department during 2011.  (Linkedin page). (Ex. 21).

68. A search on Linkedin shows that as of October 2016, over 100 persons self-identify themselves as working for NIL in Houston, Texas.  (Ex. 22).

69. During 2012, when the majority of the claimants named in the EEOC's complaint were employed within NIL's coiled business division then known as Nabors Completion Production Services (NCPS), Julia Wright and other members of NIL's Corporate Services department were investigating and reviewing reports of discrimination filed by claimants named in this lawsuit who worked in coiled tubing (CT) and stimulation or fracking departments. (Ex. 23; Ex. 24).

70. During 2012 Julia Wright investigated and was given authority to take employment actions concerning employees assigned to work for Nabors Completion Production Services (NCPS), including claimants named in the EEOC's lawsuit such as Mike Peltier and Trevor Corley.  (Ex. 23).

71. A memo dated November 23, 2012 from NCPS states as follows regarding an NCPS employee Mr. Johnson and Julia Wright, "if the investigation should find Mr. Johnson, was indeed, stealing company time, we would contact our Senior Counsel Julia Wright to get her approval to terminate Mr. Johnson [Note: Per Senior Counsel Julia Wright's instruction on 11/13/2012, **no termination or lay-off in CT department may take place without her prior approval**]." (emphasis added).  (Ex. 23).

72. Investigation of claims and charges of discrimination was done at direction of Nabors Corporate Services attorneys on behalf of NCPS. (Ex. 23).

73. NIL's agent, Nabors Corporate Services, Inc., provided payroll services for NCPS, including payroll for the claimants in Texas.  (Ex. 25).

74. NIL contracts, including a 2005 "Heads of Agreement" signed by NIL's representative include terms which required that the agreement be governed by and construed and enforced in accordance with the laws of the State of Texas. (Ex. 26, pp. 6-7).

75. During 2009 NIL announced in a press release that Larry Heidt, who had been president of Nabors Drilling USA, LP, was assuming the role of Chairman and CEO of Nabors Wells Services, Ltd. Frank Labrenz, Vice President of Personnel Services, would report directly to Mr. Heidt. (Ex. 20).

76. During 2012, Frank Labrenz was involved in investigating employment actions concerning employees assigned to work for Nabors Completion Production Services (NCPS), including claimants named in the EEOC's lawsuit such as Mike Peltier and Trevor Corley. (Ex. 23).

77. Larry Heidt was head of Nabors Completion & Production Services business up until NIL completed the merger (the "Merger") of its Completion & Production Services business including Nabors Completion Production Services, Inc. (NCPS) with C&J Energy Services, Inc. ("C&J Energy"). (Ex. 4, pp. 1, 8; Ex. 2, p. 4).